UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

IGOR MOYSEYEV, )
           Petitioner, )
            )
v. )    Case No.:  CV-07-12181-RGS
            )
CAROLYN A. SABOL, Warden of )
    FMC Devens, et al. )
        Respondent. )
_____ )

## MOTION AND REPLY TO RESPONDENT'S RESPONSE TO PETITIONER'S OBJECTION

COMES NOW Igor Moyseyev, Petitioner, Pro Se, and hereby sumbits this Motion
and Reply To Respondent's Response To Petitioner's Objection. Petitioner is res-
pectfully requesting this Court to consider Petitioner's counter-claims to Res-
pondent's Response, and to entertain a modification to Petitioner's original
Motion.

### REBUTTAL ARGUMENT

At sometime in late February, prior to it's mailing postmarked "2/28/08",
the Warden's (Carolyn A. Sabol) U.S. Attorney representative, Michael J. Sulli-
van, submitted an undated Response To Petitioner's Objection to Petitioner.
Petitioner takes exception with Respondent's Objection for the following reasons.

First, it is Petitioner's contention that the Warden did in fact use "bad
faith" in calculating Petitioner's halfway house placement. As pointed out in
Respondent's Response, pp.9-10, in quoting United States v. Gertner, 65 F.3d 963,
967 (1st Cir. 1995)(once the government has made a prima facie showing of good
faith, the burden shifts to (Moyseyev) to "articulate specific allegations of
bad faith and, if necessary, produce reasonably particularized evidence in sup-
port of those allegations.") (Emphasis added.) That is precisely what Petitioner
intends to do.

Based upon the recently enacted Second Chance Act of 2007 (hereinafter

- 1 -

"Act"), Respondent's argument for a "prima facie showing of good faith" is no longer valid, if it ever was. According to Black's Law Dictionary, "prima facie case" is defined as "The establishment of a legally required rebuttable presumption", and "A party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor". (Emphasis added.) Petitioner states that Respondent failed to establish any such "presumption" nor did Respondent produce "enough evidence" to establish the claimed "prima facie" issue.

Petitioner will now "articulate specific allegations of bad faith" by producing "reasonably particularized evidence in support of those allegations."

Respondent has attempted to justify "good faith" by claiming that under the old §3624(c) "this Court must assess whether BOP has insured that a "reasonable part" of the last 10% of Moyseyev's sentence will be served in a facility which will facilitate his reentry into the community pursuant to 18 USC §3624(c)". Respondent's Response, p.6, ¶2. If Respondent had quoted, and represented, accurately they would have stated that the old §3624(c) states "The Bureau of Prisons **shall,** to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, **not to exceed six months,** of the last 10 per centum of the term to be served under conditions that **will afford** the prisoner a **reasonable opportunity** to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection **may be used to place a prisoner in home confinement.**" (Emphasis added.)

Petitioner contends that Respondent failed to follow the intent of the old §3624(c), which was in effect when this argument of "good faith" was presented. "Shall" according to Black's Law Dictionary means "Has to duty to; more broadly, is **required** to". Respondent did not do what was "required". She did not "to the extent **practicable, assure** that" Petitioner served "a reason-

able part, not to exceed six months, of the last 10 per centum" of Petitioner's sentence, as was the Order that "the respondent and/or the Bureau of Prisons shall reconsider petitioner's placement in a Community Corrections Center". Instead, Respondent did in this particular case exactly what she has done in several of her most recent "decisions" concerning halfway house placements by granting only the bare "10 per centum", or **minimum**, amount of placement allowed. This does not substantiate her claimed "prima facie showing of good faith". Instead, it only goes to authenticate Petitioner's "articulat(ion) (of) (his) specific allegations of bad faith" on the part of Respondent.

Next, Petitioner claims that under Respondent's Declaration of Carolyn A. Sabol, Warden, dated February 12, 2008, #2, p.1, Respondent was less than candid with this Court when she stated that "One of (her) responsibilities as Warden is to make recommendations to the Community Corrections Manager (CCM) regarding inmate transfers to RRC's prior to the inmate's release into the community. Pursuant to BOP policies, (she) (is) the final decision maker on the RRC referrals at FMC Devens." Petitioner does not doubt that the Warden is "the final decision maker on RRC referrals". However, Petitioner does challenge the part of Respondent's statement that claims it is her "responsiblit(y) as Warden () to make recommendations to the Community Corrections Manager". Every inmate that understands anything that goes on within this facility "knows", as 'common knowledge' and experience that it is the Unit "Team" that actually, and in reality, "makes recommendations to the (halfway houses)". While the Warden may have to "sign off" on these "referrals", it is ridiculous to assume that she actually makes "recommendations". Counting all inmates both "inside" the FMC and those "outside" at the FPC, the Warden has approximately 1000 inmates that she would have to personally "assess" for these "recommendations". Therefore, #2 of her Declaration is a "bad faith" misrepresentation intended to

- 3 -

mislead this Court.

The next item that represents the Warden's potential intent to mislead this Court is found in #5 of her Declaration. Here, the Warden has stated "As noted in the Inmate Referral for RRC Placement (Form 210) **reflecting my recommendation, I** concluded that Moyseyev warranted an RRC Placement for the entirety of the last 10% of his sentence to facilitate re-entry into the community in accord with the directive of 18 U.S.C. §3624(c)." Again, it is "common knowledge" within this Camp that it is the Unit "Team" - and in particular, Unit Manager, Carrie Hunton - that makes these actual placement "referrals".

While the Warden does "sign off" on this Referral Form 210, it is Ms. Hunton that is actually making the decision. As "evidence" of this, Petitioner offers this Court a "Freudian slip" in the Warden's "Exhibit" of the BP-5210.073 Institutional Referral For CCC Placement. In the last paragraph of page 1, the Court is asked to consider the statement "**We** are recommending inmate Moyseyev for an RRC placement ...." The "we" is the Unit "Team" typical reference used in most of these "recommendations".

Thus, it is Petitioner's contention that this is just one more example of the Respondent's "bad faith".

Before Petitioner leaves #5 of Respondent's Declaration, Petitioner would kindly point to one further example of Respondent's "bad faith". If Petitioner had actually "considered" Petitioner's recommendation of RRC placement, the question becomes, "Why did Petitioner only receive a recommendation of the bare minimum of 10%?" Why was a "fixed" date of May 13,2008, recommended? Why, when the BOP Program Statement (hereinafter "P.S.") 7310.04, 12/16/98, p. 8, (9)(a) specifically states that a "range of at least 30 days", was Petitioner given this minimal "10%" fixed recommendation? Had the Respondent even given a scant extra 5 or 10 days, then perhaps there may have been a little credibility to

- 4 -

her "recommendation". But to make such a statement in light of the glaring RRC placement of ONLY 10% brings into question her sincerity concerning "her" recommendation.

In the Declaration, item #8 begins to give a clearer picture of the actual reasons as to why Petitioner is only being given the minimal 10% placement. Here the Warden states "I have concluded that the decision to house this inmate in FMC (actually "FPC") Devens, rather than another BOP facility (including an (sic) RRC)". The up-to-now unaddressed fact is that the reason that most inmates at FPC Devens are only being given **minimal** RRC placements is due to the number of "empty" beds at this facility. The truth of the matter is is that it is a "financial" decision. Not a decision of what is truly in the "best interest" of the many inmates. At this very date, there are 18 empty beds. And although Petitioner would hard-pressed to find anyone to openly admit it, Petitioner, nonetheless, contends that several inmates have been directly told (by staff) that the reasons that no inmates are receiving transfers OR are being given additional halfway house placements is precisely because of the "empty beds" issue. Therefore, Petitioner states that the Warden's Declaration stated above is just one more example of her "bad faith" misrepresentation to this Court.

Continuing with item #8 of the Declaration, the Warden next represents to this Court that "Of particular note in reaching this conclusion (she) noted ... he owes approximately $68,000 in restitution." However, she failed to state precisely **how** this effected her decision. It surely wasn't because Petitioner's restitution was "high"; because several inmates that have recently been going to halfway houses have had literal **millions** owing in restitution. Which begs the question, "if an inmate owes NO restitution, does that mean that they are entitled to NO RRC placement?" She has made a hollow statement without any substantive explanation, thus strengthening Petitioner's argument for a further showing of "bad faith".

- 5 -

Finally, one last example of "bad faith" on the part of the Respondent for the Court's consideration. Petitioner probably does not need to point out to this Court the fact that Respondent first submitted to this Court (via her U.S. Attorney, Michael J. Sullivan) her letter of February 1, 2008, in which it was stated (in part) that "in the interest of judicial economy, the Government **will not be filing a memorandum of law opposing** this petitioner's habeas challenge to the BOP's Regulations". (Emphasis added.) Then, 8 days after the issuance of this Court's Memorandum and Order of February 4, 2008, Respondent filed her Declaration indicating that Petitioner would only get the minimal amount of RRC placement, in spite of the fact that Petitioner's maximum eligibility date of December 29, 2007, entitled Petitioner to almost immediate release into RRC placement almost as in deliberate defiance of this Court's reasoned intent. Petitioner feels that this definitely and clearly exhibits Respondent's "bad faith" and shows conclusively her ulterior motives.

Therefore, Petitioner respectfully submits to this Court that Respondent not only failed to present a **"prima facie showing"** as she has tried to claim, but has also demonstrated obvious and provable "bad faith" in attempting to do so. Petitioner prays that this Court will agree.

Now Petitioner would like to address the "bad faith" representations within the Respondent's attorney's Response To Petitioner's Objection (hereinafter "Response"). The first of these cleverly worded "misrepresentations" &/or "misstatements" is found at Response, p.1, ¶2, where Respondent states "Respondent filed an affidavit of Warden Carolyn Sabol evidencing that she had **reconsidered** Moyseyev's RRC placement date **without regard for the disputed regulations.**"

First, Petitioner wishes to direct Court's attention to the differences of the words used in the Response versus those used in the Declaration. Response states that the Warden "reconsidered". Yet nowhere in the Declaration **after** the

- 6 -

1st number, where Respondent states "I provided this decalration in response
to this Court's February 4, 2008, Order, directing that an Affidavit be filed
by the final decision maker demonstrating compliance with said Order to **recon-
sider** Petitioner's Residential Reentry Center (RRC) placement referral" She did,
however, use the word "consideration"; but not **"reconsideration"**. They are not
the same thing. Additionally, Petitioner would like to point of to the Court
that although they are similar, the words "reconsider" and "review" do not have
precisely the same meaning. According to the Merriam Webster's Collegiate Dic-
tionary in the prison law library, "reconsider" is "to consider **again esp. with
a view to changing or reversing**." "Review" on the other hand means "1: to view
or see again  2: to examine or study again  3: to look back on: take a retro-
spective view of  4: **a:** to go over or examine critically ...." Therefore, Peti-
tioner submits that Respondent most probably did "review" Petitioner's RRC
palcement. However, Petitioner does not believe that Respondent "reconsidered"
Petitioner's RRC placement **as was the Court's Order.** Thus, as Petitioner has
already stated, "a very clever play on words" that do not meet the Court's
intent, and thus circumventing what was required.

Next, nowhere in the Court's Order did Petitioner find that Respondent
was ordered to reconsider "without regard for the disputed regulation."
Obviously, Respondent has received so many challenges (§2241 Motions) to her
failure to provide anything more than minimal RRC placements that she cannot
keep them straight. This would have been nice, but it was not a part of Peti-
tioner's Memorandum and Order from this Court.

The next misrepresentation (and "bad faith" example) to this Court was at
Response, p.2, ¶1, where it was stated "Warden Sabol also concluded that after
**individualized review** of the factors ...." Petitioner once again contends that
there was no "individualized" review. There may have been a "cursory" review;
but Petitioner seriously doubts that any such "individualized" review, intended

by the Order of this Court, occured. (Reiteration of the earlier stated reasons.)

Petitioner now will address Respondent's Argument. While Respondent's argument may have had some validity when it was originally offered to this Court on whatever dated it was filed prior to its February 28, 2008, mailing, Respondent's arguments are now moot with the passages and signing into law of the Act.

Respondent can no longer rely on her reliance of the First Circuit's Muniz ruling and her previous reliance on the Lopez decision. These are no longer valid case law as of April 9, 2008. So in the interest of judicial economy, Petitioner will not address each and every point of the previously accepted, but now moot issues which the Respondent raised in her Response. Suffice it to say simply that Petitioner now relies on the requirements of the Second Chance Act of 2007 to prevail in any decision this Court may now make.

In Respondent's Response, "II" under "Argument", Pp.3-5, Petitioner again disagrees with Respondent's assessment of her authority and of this Court's lack of jurisdiction. While Petitioner is not a trained attorney, nonetheless Petitioner has reseatched and reas the Respondent's referenced statutes (18 USC §3625, 5 USC §§554-555, 701-706) in the limited law library at this FPC, and after this research has concluded the Respondent has once again misstated &/or misrepresented the issue.

While Petitioner does not dispute the quote of Senate Report 98-225, P.L. 98-483, Comprehensive Crime Control Act of 1984, 1984 U.S.C.C.A.N. 3182, 3332, 1983 WL 25404, *149 (August 4, 1983), Petitioner does not agree with Respondent's statement that "Congress made clear its intent that BOP should be afforded **unfettered discretion** to make individual placement decisions and the court should not, absent a constitutional issue, review such decisions". Obviously Respondent reads into that regulation something that the Court's have not, since 5 USCS 706 in particular has numerous cases in which the various Circuit Courts of Appeal

- 8 -

have decided that the courts **do** have the right of "judicial review" for various
reasons. Nowhere did Petitioner read anything about the BOP being **"unfettered"**
in their "discretion". Thus, Petitioner contends that the Respondebt has again
misstated the facts to this Court.

Examples used to illustrate the Petitioner's point include the Respondent's
case law cites:

1) Putnam v. Winn, 441 F.Supp.2d 253, 255-256 (D.Mass.2006) - There is NO
APA issue within Petitioner's case. So "habeas review" in that situation is
irrelevant to this case at hand;

2) Fox v. Lappin, 409 F.Supp.2d 79, 89 (D.Mass.2006) - "The Court, there-
fore **can** only **review** the Bureau's policies regarding the **placement of inmates**
... to determine if they are contrary to the Bureau's statutory authority under
(§§)3621 and 3624, not the decision itself." However, the Respondent failed to
mention that the Court **has** the authority to find the Respondent of contempt,
issue orders to "produce" the Petitioner for hearings, and other such "powers"
if, and when, the Respondent fails to follow the orders of the Court. In other
words, the Court does have the authority to review and does retain jurisdiction
if Respondent fails to comply with Court Orders;

3) Wiles v. Sabol, 07-11579-NG, Order dated December 3, 2007 - "... this
Court ordered Respondent to reconsider Petitioner's commumity corrections
placement in good faith and in accordance with the standards employed by the
Bureau of Prisons prior to December 2002 without consideration of CFR §§570.20
and 570.21. The Order did not direct a particular outcome for the reconsidera-
tion, but only that it be based on Petitioner's individual circumstances and
merits as directed in 18 USC §3621(b). The Court is in receipt of Respondent's
affidavit demonstrating compliance with the Order. In light of Respondent's
compliance, the Court cannot now challenge Respondent's determination."

- 9 -

Although Petitioner does not have access to the Wiles case or Respondent's affidavit (since Wiles has now been released) from within the confines of this prison library, nonetheless, Petitioner is confident that he would be safe in assuming that the Wiles affidavit is little more than a "form letter", almost identical to Petitioner's letter, with only the "personal" information changed, based upon the several other inmate's "affidavits" recently filed by Respondent, which Petitioner has seen. If this is so, then the Wiles "compliance" affidavit is probably as wrought with the same misstatements and misrepresentations as is this Petitioner's.

Petitioner must additionally add that he was surprised at the obvious audacity of Respondent when Respondent dared to tell this Court that "the Court **cannot** now **challenge** Respondent's determination." (Emphasis added.)

Next, prior to the Wiles cite, Petitioner would draw the Court's attention to the statement of the Respondent that says, "Perhaps more telling, courts in this district have also uniformly rejected challenges seeking to compel Warden Sabol to award longer RRC assignments in circumstances **identical** to those of Moseyev." (Emphasis added.) **"Identical"**! Petitioner hereby states that Respondent, or any other prosecutor would be hard-pressed to find a case **"identical"** to that of Petitioner. While there may be cases that would be **"similar"**, Petitioner contends that trying to find an **"identical"** case would be like searching for an **"identical"** fingerprint. "Similar" would be an acceptable term. But "identical" is a far reach even for Respondent. Ergo, Petitioner submits to this Court that this is yet one more example of Respondent's overreach in her misstating and misrepresenting her true position and compliance with this Court's Order.

So in summary of Respondent's argument for this Court's lack of jurisdiction over the subject matter of Petitioner's case, Petitioner reiterates his above points and adds that the Respondent has drawn an erroneous conclusion of her interpretation of 18 USC §3625 in this case along with the statement

- 10 -

that "this Court lacks suject matter jurisdiction to review the individual place-
ment decision at issue." If Respondent had, in fact, conducted an "individual
placement" as this Court Ordered this claim may have had at least a little more
credence; but under these circumstances that argument seems somewhat ludicrous.

Now the Respondent turns around in an attempt to "cover all the bases" and
almost admits that the Court may - in fact - have "some jurisdiction" in Respon-
dent's Argument point #III, pp. 5-10. Here, we begin to get to the heart of the
matter beyond Respondent's "bad faith". Respondent opens by attempting to con-
vince this Court that Petitioner "fails to state any basis upon which this Court
could **reasonably** question the good faith of the decisions." Petitioner feels that
he has more than met the Respondent's challenge of showing "bad faith" by Respon-
dent. But to exceed the Respondent's challenge, Petitioner will still continue to
present additional examples for this Court to end the charade of "good faith"
that Respondent seems to persist in. Finally, the Respondent admits "While the
exact scope of this Court's ability to review BOP's decision is far from clear
...". Didn't Respondent just conclude her previous Argument II by stating that
"this Court lacks subject matter jurisdiction"? And now admits that "the exact
scope of this Court's ability (authority) to review ... is far from clear".

Petitioner would assume that there is a proper legal term for this (not
including "reason"), but due to Petitioner's lack of legal training, the only
appropriate terminology Petitioner can present is "having your cake and eating
it, too"! Apparently, Respondent "wants it both ways". Petitioner relies upon
this Court to determine whether this is "bad faith" or just lack of "reason".
In either event of the Court's determination of this issue, Petitioner feels
that his rebuttal arguments **do** overcome Respondent's statement that he "fails
to state any basis upon which this Court could reasonably question the good
faith of the decision." Petitioner feels he has overcome this challenge.

Under Respondent's Argument III, A. The "Decision" At Issue, p.5, Respondent discusses the two ruling statutes of her "authority", §3621(b) and §3624(c). While §3621(b) has not changed, the signing into law of the new Second Chance Act of 2007 (2008), has dramatically changed the complexion of Respondent's agruments as presented, making several of them moot. Especially those that rely on Muniz and the First Circuit's previous (now moot) ruling.

Petitioner acknowledges that 18 USC §3621(b) remains intact. However, Petitioner again returns to his argument that Respondent did not fulill either the Order of the Court or the intent of §3621(b), thus showing "bad faith" in her application of this section under the guise of her "authority".

Respondent tries to imply that "the last 10% of an inmate's sentence ... would assist the prisoner's transition to the outside world." Obviously, the Congress and President of the United States would tend to disagree with the Warden's interpretation of this purpose, considering that the Act specifically states that "the Director of the Bureau of Prisons **shall** issue regulations ... which **shall ensure** that placement in a community correctional facility by the Bureau of Prisons is-- ... (c) **of sufficient duration to provide the greatest likelihood of successful reintegration into the community.**" Clearly, the Warden has failed in the spirit of the new law by exercising her authority to deny Petitioner the "greatest likelihood of successful reintegration into the community." This is the precise point that Petitioner (as well as the numerous other inmates that have filed §2241 Motions against the Warden) has been trying to express. This Respondent is denying inmates a "fair" opportunity at RRC placement primarily because of a "financial" consideration by this BOP facility, instead of actually considering the each inmate "individually". Petitioner once again reiterates that this is "bad faith", because the "intent" of the new law very clearly states that RRC placements are to be "determined on an individual basis." 18 USC §3624(c)(6)(B)&(C).

- 12 -

Furthermore, the Act now removes the "10%" terminology and has replaced with "a portion of the final months of that term ...(not to exceed 12 months)." (Emphasis added.) Apparently, Congress felt that in order to reduce recidivism, 6 months and the 10% was not sufficient in order to accomplish what they intended for §3624(c) to achieve. This is a direct contradiction to what Warden Sabol has been implementing at this facility.

The remainder of Respondent's parts "A" and "B" are nearly all moot due to the enactment of the Act, and therefore now clearly invalid arguments. However, Petitioner feels compelled to address Respondent's part "C". Especially where the Respondent states "That ends the inquiry," because with the enactment of the Act, this inquiry is clearly not ended.

Respondent based this assumption upon what she considered the strength of the old §3624(c) which has now been futher clarified to prevent just such travesties as have occured in the case at hand. To emphasize the differences in the old versus the new §3624(c), Petitioner submits this side-by-side comparison for this Court.

OLD: The - - - - - - - - Bureau of Prisons shall, to the extent
NEW: The **Director of the** Bureau of Prisons shall, to the extent

   practicable, **assure** that a prisoner serving a term of imprisonment
   practicable, **ensure** that a prisoner serving a term of imprisonment

   spends a **reasonable part,** - - - - - - - - - - - - **not to exceed**
   spends a **portion of the final months of that term (not to exceed**

   **six months, of the last 10 percentum of the term to be term to be**
   **12 months),** - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   **served** under conditions that will afford **the** prisoner a reasonable
   - - - under conditions that will afford **that** prisoner a reasonable

   opportunity to adjust to and prepare for the **prisoner's re-entry**
   opportunity to adjust to and prepare for the - - - - - **reentry**

   - - - - - - - - into the community.
   **of that prisoner** into the community.

   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
   **Such conditions may include a community correctional facility.**

- - - - - - - - - - - - - - The authority **provided by** this
**(2) HOME CONFINEMENT AUTHORITY - The authority under** - - - this

subsection may be used to place a prisoner in home confinement.
subsection may be used to place a prisoner in home confinement

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**for the shorter of 10 percent of the term of imprisonment of that**

- - - - - - - - - - -
**prisoner or 6 months.**

- - - - - - The United States Probation System shall, to the
**(3) ASSISTANCE-** The United States Probation System shall, to the

extent practicable, offer assistance to a prisoner during **such**
extent practicable, offer assistance to a prisoner during - - -

**pre-release** custody.- - - - - - - - - -
**prerelease** custody **under this subsection.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Everything hereafter is new to §3624(c)**
**so therefore will not in BOLD.**
(4) NO LIMITATIONS- Nothing in this subsection shall be construed to
    limit or restrict the authority of the Director of the Bureau
    of Prisons under section 3621.

(5) REPORTING- .... (Not referenced)

(6) ISSUANCE OF REGULATIONS - The Director of the Bureau of Prisons shall
    issue regulations ...
        (A) conducted in a manner consistent with section 3621(b)
            of this title;
        (B) determine **on an individual basis;** and (emphasis added)
        (C) **of sufficient duration to provide the greatest likelihood**
            **of successful reintegration into the community.**
            (Emphasis added).

It should be apparent from this that the intent of this law is to provide <u>MORE</u>

and not less RRC placement time. But just to add one final emphasis to this

point, the Petitioner would offer one additional explanation from the Act.

In the Act itself, as passed by the House and the Senate, Section 3, Purposes;

Findings, (b) Findings - Congress finds the following: (7) "Released prisoners

cite family support as the most important factor in helping them to stay out of

prison. Research suggests that families are an often underutilized resource in

the reentry process."

Petitioner therefore submits that Respondent may have believed that she was fulfilling the duty of her position by deliberately and intentionally denying inmates adequate and sufficient halfway placements heretofore, but this can no longer be the situation in light of the newly enacted Second Chance Act of 2007 (2008). Congress has made their intent perfectly clear. Inmates should be receiving more, and not less, RRC placement time to be afforded the proposed reintegration time into the community, be given more opportunity to have family ties strengthened, and to have a greater chance to reduce recidivism. The "old" ways are no longer to be accepted or tolerated by the Courts, the public, or by the Bureau of Prisons.

Next, the Respondent states "At a minimum, to raise questions of the "good faith" of Warden Sabol's exercise of her discretion, something more than simple dissatisfaction with the results is required." Petitioner has achieved this. Petitioner has shown that there is no "prima facie" showing for the Respondent. Petitioner has shown that there exists "ulterior motives" on behalf of this Warden in withholding RRC placements because of "low inmate population" causing financial (budgetary) issues heretofore unrevealed. Petitioner has given substantial "proof" that under the new Act, that Congress intends that inmates be given more, and not less halway house time. Therefore, Petitioner submits to this Court that he has shown "more than simple dissatisfaction with the result." Petitioner has met the Respondent's challenge to "articulate specific allegations of bad faith" and has "produced particularized evidence in support of those allegations." Petitioner's claims **do** "rise to that level."

Finally, in concluding these arguments by Petitioner, he would like to address one final issue brought forth by the Respondent. That issue would be the obvious blatant arrogance shown by the Respondent to this honorable Court. Two specific examples would be in the use of the word "**unfettered**" by the Respondent, not once, but twice. (*See Response, p.3 and p.11) Nowhere did Peti-

- 15 -

tioner find the use of the word **"unfettered"** in any portion of either §3621(b) or §3624(c). Then, to exacerbated the matter further, Respondent implied that this Court had no authority whatsoever in this matter when Respondent concluded with the statement "So long as the BOP considers the factors set out in Section 3621(b), as it clearly has here, it may place an inmate anywhere it wishes, for as long as it wishes." What audacity. When Petitioner's Mandatory Release Date arrives, Petitioner does not believe for a single moment that the BOP **"may place an inmate anywhere it wishes, for as long as it wishes"**! Petitioner again reiterates his belief that the BOP did NOT "consider the factors set out in (§)3621 (b)". And even if Respondent had done so, in light of the enactment of the Act, these original considerations are no longer necessarily valid.

## CONCLUSION

Petitoner now submits one final "fact" to this Court which has heretofore remained unexposed or addresses. In every instance, not only of Petitioner but for every other inmate that has been at FPC Devens for the entire sentence of Petitioner, **no** inmate has ever been provided with the proper "Team" classification review that is **required** by both 28 CFR §524.11 and by Program Statement 5322.11(7)(a), both of which read:

> "The Warden shall ensure that each department within the institution has the opportunity to contribute to the classifcation process.
> a. **At a minimum,** each classification (unit) team **shall** include the unit manager, a case manager, and a counselor. An education advisor and a psychology services representative are also ordinarily members of the team. Where the institution does not have unit management, the team shall include a case manager, counselor, and one other staff member."

Petitioner hereby states under oath with obligation of penalty for perjury that he has never had a legally authorized "Team Meeting" while at FPC or FMC Devens. Further, Petitioner states that up until this very week, when a newly assigned Case Manager and newly assigned Counselor began serving at FPC Devens,

- 16 -

that no other inmate had ever been afforded an authorized "Team Meeting" either. "Team Meetings" are an essential and vital part of ALL **"classifications"** as directed and required by law for all inmates. Yet, at this facility, every inmate has been denied this "right".

For the edification of this Court, I will briefly explain "how" the required "Team Meetings" have been conducted at FPC Devens for the past few years. The inmates are often not even given the required 48 hours advanced notice. We are simply paiged to the Case Manager's office, were we are summarily presented the pre-printed Program Review form (or their Initial Classification), which is **generally** back-dated (not usually the actual or true date, but one that conforms to what is supposed to be the "legal" or true date the "team" meeting was supposed to have been held), and then simply told to sign the form. Again, these "team" meetings usually are simply a one-on-one meeting with the Case Manager only.

28 CFR §524.12(d) and P.S.5322.11(8)(d) - "... The Program Review Report is to be signed by the unit manager and the the inmate, and a copy is to be provided to the inmate. ..."

28 CFR §524.12(e) and P.S.5322.11(e) - "The inmate is to be provided with, and must sign for, a copy of the Program Review Report. If the inmate refuses to sign for a copy of this report, staff witnessing the refusal shall place a signed statement to this effect on the report. Staff shall place a copy of the Program Review in the inmate's central file."

Petitioner states unequivocably to this Court that he has **never** had any such "team" meeting with **either** the Counselor **or** the Unit Manager present.

Thus, Petitioner submits the query to this Court that **IF** Petitioner has **NEVER** been afforded a "team" meeting **as required by statute and Bureau "policy"**, how is it that the Respondent can possibly claim to have **"individually" reviewed** my files? I have **NEVER** had any "input" into my "classification" and/or Program Reviews as is required by law. Where is the "good faith" in this?

- 17 -

Where is the "good faith" when the Unit Manager is not available for either questions or access except for the one (1) night per week that she comes to the Camp for approximately 4 or 5 hours, having an "Open House" for approximately an hour? Where is the "good faith" in inmate's being basically forced to sign "Team Meeting" Program Reviews that are consistently "back-dated" with ONLY the Case Manager present? Where is the "good faith" when Petitioner and the other inmates are being denied the opportunity for the required "input by the inmate" in both "Team Meetings" and Inmate Financial Responsiibility Program decisions? The answer is an obvious reply that there is **NO** "good faith" in most of the "decisions" concerning them, even when the law requires that "input".

Petitioner therefore claims that there is more than adequate reason and verifiable "proof" that Warden has shown "bad faith" in her claims and representations to this Court. Petitioner would beg this Court's indulgence in one final query before concluding his summary. Petitioner would respectfully ask this Court to examine (on it's own authority) the "qualifications" that the Warden stated in her Declaration. She stated that she has been "Warden at two other prisons." Petitioner would inquire "Why did she leave these previous two prisons?" It is rumored within this facility that she had "problems" at the Tuscon FCI. Petitioner is not in a position to verify this from "inside" the FPC. But if these rumors are true, Petitioner feels that this information may possibly go to support his "bad faith" claim based upon a potential "history".

REQUEST

Petitioner is respectfully requesting this Court to, first, carefully consider all the information and "bad faith" arguments Petitioner has presented. Petitioner understands that it is now basically too late for this honorable Court to now have a timely influence on any further reconsideration for Petitioner's pre-release date to an RRC, since Petitioner is currently scheduled for RRC Placement on May 13, 2008. However, what Petitioner now

- 18 -

seeks is modification to his Motion for this Honorable Court to consider the issuance of an Order that requires Respondent to place him directly into Home Confinement instead of being required to be placed in an RRC placement (half-way house) facility. Under the newly enacted Act, Petitioner is now qualified for such placement. Additionally, not only is this Home Confinement placement authorized, it is also encouraged through the obvious "intent" of the Congress. Furthermore, in light of the wording of the Act itself, which states, concerning Home Confinement, "The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 USC §3624(c)(2), Second Chance Act of 2007 (2008).

Since Petitioner's "6 month" date under the Act was December 29, 2007, Petitioner is eligible for home confinement immediately. If Respondent still persists with her "bad faith" placement date of May 13, 2008 - Petitioner's actual 10% date - then there is no legitimate reason, or purpose, not to grant Petitioner's request for this Home Confinement placement.

Petitioner submits that he has shown beyond a reasonable doubt that Respondent has (1) failed to present a "prima facie showing", (2) has failed to "reconsider petitioner's placement in a Community Corrections Center" in "good faith", and (3) has, during the course of Petitioner's confinement at FPC (FMC) Devens, has knowingly and openly violated other of Petitioner's "rights" as provided for by both statute and Bureau Policy.

Therefore, Petitioner respectfully requests this Court to issue whatever Orders that may fall within in its jurisdiction and authority to assure that Petitioner may receive the requested Home Confinement placement in lieu of the presently scheduled RRC placement, and to protect Petitoner's other statutory "rights" that may exist in the time Petitioner has remaining to be served.

- 19 -

Respectfully submitted this 21st day of April, 2008.

Igor Moyseyev, Petitioner, Pro Se

Igor Moyseyev / 25489-038
FPC / Devens
P.O. Box 879
Ayer, MA 01432

CERTIFICATE OF SERVICE

I, Igor Moyseyev, Petitioner, Pro Se, certify that I have served a copy of
this Motion and Reply sent to Respondent's Attorney, Michael J. Sullivan, United
States Attorney, by USPS first class mail on April 21, 2008, at his address of
United States Attorney's Office, District of Massachusetts, John J. Moakley
Courthouse,Suite 9200, 1Courthouse Way, Boston, MA 02210.

Igor Moyseyev, Petitioner, Pro Se